ABDU C. NESSRALLA *vs.* JOHN H. PECK & others.[1]

Plymouth. October 4, 1988. — January 11, 1989.

Present: HENNESSEY, C.J., WILKINS, LIACOS, & O'CONNOR, JJ.

*Practice, Civil,* Findings by judge. *Judge. Frauds, Statute of. Estoppel. Jurisdiction,* Specific performance. *Trust,* Constructive trust, Resulting trust. *Agency,* Agent's contract.

Findings of fact and conclusions of law, drafted by a judge after the jury-waived trial of a civil action and while he had the authority of a Superior Court judge, fulfilled the requirements of Mass. R. Civ. P. 52 (a) even though the memorandum of decision was not typed in final form until after the judge's resignation. [759-761]

The plaintiff in an action seeking specific performance of an oral agreement to convey real property did not demonstrate any detrimental reliance or part performance of the agreement that would estop the defendant from pleading the Statute of Frauds as a defense. [761-762]

In a civil action the judge correctly declined to impose a constructive trust on certain property the defendant had purchased for himself after having made an oral agreement to purchase and convey it to the plaintiff, where there was no violation of a fiduciary relationship between the parties and where no fraud was demonstrated. [762-763]

There was no merit to a plaintiff's claim that the defendant held title to certain real estate subject to a resulting trust in the plaintiff's favor, where the plaintiff had furnished none of the consideration for the defendant's purchase of the property. [763]

The claim of a plaintiff for relief on the ground that the defendant was a faithless agent in purchasing certain property for himself after making an oral agreement to purchase and convey to the plaintiff was barred by the Statute of Frauds, where the parties contemplated that the defendant's performance would not be completed within one year. [763]

CIVIL ACTION commenced in the Superior Court Department on May 1, 1984.

The case was heard by *William G. Young,* J.

---

[1] Lily H. Bentas and V.S.H. Realty, Inc.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Frank J. McGee* (*Steven M. Guiney* with him) for the plaintiff.

*John C. Englander* (*Ellen B. McGinty* with him) for the defendants.

HENNESSEY, C.J. The plaintiff, Abdu C. Nessralla, brought this action seeking specific performance of an oral agreement to convey a tract of land. After a trial without a jury, a judge of the Superior Court entered judgment in favor of all the defendants. The plaintiff appealed. The Appeals Court entered an order, 25 Mass. App. Ct. 1114 (1988), vacating the judgment and remanding the case for a new trial, ruling that the judge's findings under Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), were null and void because they were not reduced to writing until after the judge left the Superior Court bench. We granted the application for further appellate review. We conclude that the judge's findings are valid, and affirm the judgment.

We summarize the judge's findings, which both parties essentially accept. The plaintiff, Abdu C. Nessralla, is the owner of a farm in Halifax. Adjacent to his farm is the Sturtevant farm, and across the street is the Hayward farm. The defendant, John H. Peck, is the plaintiff's son-in-law and an employee both of the Cumberland Farms dairy and convenience store chain, and the defendant V.S.H. Realty, Inc., a corporation principally engaged in acquiring and owning the property on which Cumberland Farms stores are located. In the spring of 1981, the defendant Peck asked Nessralla to act as a straw in V.S.H. Realty's acquisition of the Hayward farm. In return, Peck agreed to act as a straw to assist Nessralla in purchasing the Sturtevant farm. Nessralla had been engaged in a dispute with the owner of the Sturtevant farm, a chicken farmer named Carlton, because Carlton introduced approximately 40,000 chickens onto the Sturtevant farm. Nessralla, therefore, asked Peck to act as a straw because he reasoned that Carlton would be unlikely to sell to him directly.

Nessralla purchased the Hayward farm, putting up $11,000 of his own and taking title to the property in September, 1981. V.H.S. Realty reimbursed Nessralla and paid the entire purchase price of $162,500 for the Hayward farm. In September, 1982, Nessralla conveyed the farm to V.S.H. Realty under a deed reciting consideration of "less than $100."

Nessralla thereafter asked Peck about his efforts to acquire the Sturtevant farm from Carlton. Peck assured Nessralla of his continued best efforts to purchase the farm on Nessralla's behalf. At no time did Nessralla tender any funds to the defendant Peck for use in making an offer on the farm.

In December, 1983, Peck purchased the Sturtevant farm from Carlton in his own name, and subsequently conveyed the property to himself and his cousin, the defendant Lily Bentas, as tenants in common. Nessralla did not participate in the purchase of the farm, did not provide any of the purchase price, and had no knowledge that the purchase had taken place for approximately one month. Nessralla requested that Peck sell him the farm; Peck failed to answer him.

Nessralla then filed a complaint seeking specific performance of Peck's oral agreement to convey the Sturtevant farm to him. The case was heard without a jury on May 22, 1984. On May 23, 1985, the day before the Superior Court judge was inducted as judge of the United States District Court, he entered a judgment dismissing Nessralla's action. On June 20, 1985, after he had ceased to be a Superior Court judge, the trial judge filed a memorandum of decision containing his findings of fact and conclusions of law in support of the judgment. The former judge found that the Statute of Frauds operated as a complete defense; that there could be no resulting trust because Nessralla furnished no consideration; that there could be no constructive trust because there was no fraud or violation of a fiduciary relationship; and that any claim that Peck was a faithless agent was barred by the Statute of Frauds. A second Superior Court judge ordered the findings of fact and conclusions of law to be entered nunc pro tunc to May 23, 1985.

Although none of the parties raised the issue on appeal, the Appeals Court ruled that the former judge's findings of fact and

conclusions of law were a nullity. The court reasoned that after resignation a judge lacks authority to make findings of fact and conclusions of law, which are required by Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), in a trial without a jury.[2] The Appeals Court noted that the former Superior Court judge stated in his memorandum of decision that "[u]pon these factual conclusions and this reasoning, I had concluded well before May 23, 1985 that judgment must enter for all these defendants." The court interpreted this statement to mean that the judge "had formulated tentative findings of fact and conclusions of law in his mind but had put nothing on paper before he left the Superior Court." Allowing tentative findings of fact and conclusions of law to satisfy Mass. R. Civ. P. 52 (a), the Appeals Court reasoned, would contravene the purposes of the rule. The court, therefore, ruled that the former judge's findings of fact and conclusions of law were a nullity, and treated the appeal as if the judge had failed to make necessary findings. Because the record indicated that the facts at trial were contested, and any decision would therefore require the court to engage in fact-finding, the Appeals Court vacated the judgment and remanded the case for a new trial.[3]

We agree with the Appeals Court's interpretation of the purposes of rule 52 (a). The rule is designed to "(1) insure the quality of a judge's decision making process by requiring simultaneous articulation of the judge's underlying reasoning; (2) assure the parties that their claims have been fully and fairly considered; and (3) inform an appellate court of the basis on which a decision has been reached." *Cormier* v. *Carty*, 381 Mass. 234, 236 (1980). *Schrottman* v. *Barnicle*, 386 Mass. 627, 639 (1982). We disagree, however, with the Appeals

---

[2] Rule 52 (a) of the Massachusetts Rules of Civil Procedure provides: "In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law."

[3] Findings are not jurisdictional. See 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2577 (1971). Therefore, where the parties do not contest the facts, and they appear to be clearly established on the record, an appellate court need not remand a case for lack of findings. *Bruno* v. *Bruno*, 384 Mass. 31, 35 (1981). *Commonwealth* v. *One 1969 Mercedes-Benz Auto.*, 375 Mass. 663, 666 n.3 (1978).

Court's interpretation of the former Superior Court judge's explanation for the late filing of his memorandum of decision.

The former judge's entire explanation, included in his memorandum of decision, is as follows: "[u]pon these factual conclusions and this reasoning, I had concluded well before May 23, 1985 that judgment must enter for all these defendants. However, since I 'labored under the same disability as a majority of [my] Superior Court brethren in having little or no secretarial assistance available at the designated court to expedite the final product,' . . . delay has ensued." We read this statement to mean that the former judge's findings of fact and conclusions of law were in draft form before his resignation, but simply had not yet been typed. We believe, therefore, that the judge's findings of fact and conclusions of law were written while he had the authority of a Superior Court judge. Furthermore, we conclude that these findings of fact and conclusions of law fully serve the purposes of rule 52 (a), and that the Appeals Court, therefore, improperly vacated the judgment on this ground. The draft findings of fact and conclusions of law, although not in final typed form, helped to ensure a reasoned decision making process, and the memorandum of decision in its final form, although delayed, assured the parties that the judge fully considered their claims and allows for appellate review. We therefore conclude that the findings of fact and conclusions of law are valid, and turn to the merits of the appeal.

We first address Nessralla's claim that Peck is estopped from pleading the Statute of Frauds, G. L. c. 259, § 1 (1986 ed.), as a defense for the suit for specific performance, and conclude it has no merit. A plaintiff's detrimental reliance on, or part performance of, an oral agreement to convey property may estop the defendant from pleading the Statute of Frauds as a defense. E.g., *Fisher* v. *MacDonald*, 332 Mass. 727, 729 (1955), *S.C.*, 335 Mass. 429 (1957); *Andrews* v. *Charon*, 289 Mass. 1, 5 (1935). Specific performance under this rule may be warranted where the party seeking relief suffers "the infliction of an unjust and unconscientious injury and loss." *Glass* v. *Hulbert*, 102 Mass. 24, 36 (1869), quoted in *Andrews*, *supra*. Nessralla claims that he suffered such an injury in

reliance on the oral agreement, both because he purchased the Hayward farm on Peck's behalf and because he omitted taking action to purchase the Sturtevant farm on his own behalf. We disagree. Nessralla ultimately provided no money toward the purchase of the Hayward farm. Indeed, Nessralla points to no evidence that suggests he would have attempted to purchase the property, or would have sought out another to purchase the property on his behalf, had the oral agreement not existed. Such illusory "reliance" on an oral agreement to convey property does not rise to a level which estops the defendant from pleading the Statute of Frauds. See, e.g., *Gordon* v. *Anderson*, 348 Mass. 787 (1965) (specific performance of oral agreement appropriate where plaintiff gave down payment, took possession, made substantial improvements, and sold prior residence); *Fisher, supra* (specific performance of oral agreement appropriate where plaintiff furnished part of consideration and took possession); *Andrews, supra* at 5-7 (specific performance of oral agreement appropriate where plaintiff paid purchase price, made minor improvements, and took possession). The judge properly ruled that the Statute of Frauds was a complete defense to Nessralla's claim for specific performance.

We similarly reject Nessralla's contention that the judge erred by not imposing a constructive trust on the Sturtevant farm. A court in equity generally may impose a constructive trust "in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation." *Barry* v. *Covich*, 332 Mass. 338, 342 (1955). *Meskell* v. *Meskell*, 355 Mass. 148, 151-152 (1969). In the present case, no fiduciary relationship existed between Peck and Nessralla. Nothing in the record suggests this was anything other than an arm's-length transaction, see *Superior Glass Co.* v. *First Bristol County Nat'l Bank*, 380 Mass. 829, 832 (1980), and Peck's family relationship with Nessralla, by itself, does not make him a fiduciary. *Kelly* v. *Kelly*, 358 Mass. 154, 156 (1970). *Ranicar* v. *Goodwin*, 326 Mass. 710, 713-714 (1951). Furthermore, there was no fraud. The judge specifically found, and his finding was warranted, that Peck did not intend to purchase

the Sturtevant farm for himself at the time of the oral agreement. Although conceding that a subsequent refusal to carry out an oral promise, by itself, is not fraud, see *Meskell, supra,* Nessralla argues that the judge was required to draw an inference of fraud based on Peck's subsequent actions. After reviewing the record and the judge's findings, we conclude that such an inference was neither warranted nor required. The judge correctly ruled that no constructive trust is created on these facts.

Finally, we turn to Nessralla's claims that Peck holds the Sturtevant farm subject to a resulting trust, and that Peck was a faithless agent. Neither claim has merit. First, "[a] resulting trust typically arises when a transfer of property is made to one person and the purchase price is paid by another; in such a case a trust results in favor of the person who furnished the consideration." *Meskell, supra* at 150. *Quinn* v. *Quinn,* 260 Mass. 494, 501 (1927). Nessralla provided nothing toward the purchase price of the Sturtevant farm, and thus a resulting trust cannot be imposed on that property for his benefit. Second, the Statute of Frauds is a defense to Nessralla's claims, sounding in contract, that he is entitled to some form of relief because Peck was a faithless agent. The Statute of Frauds bars an action on an agreement "that is not to be performed within one year from the making thereof." G. L. c. 259, § 1. The judge found that the parties contemplated that Nessralla's performance would not be completed within one year. This finding was warranted on the evidence. Nessralla's claim, therefore, must fail.

Because we conclude that the claims against Peck are groundless, it follows that the claims against V.S.H. Realty and Lily Bentas are similarly without merit.

*Judgment of the Superior
Court affirmed.*